ISRAEL WILSON *v.* THE CONWAY FIRE INSURANCE COMPANY.

An agent for an insurance company, empowered merely to receive written applications for insurance, to transmit them to the company, and, if they decide to take the risk, to receive the policy executed by them and to issue it to the applicant upon receipt from him of the premium, is not the agent of the company for the making of applications; and if employed by the applicant, or permitted to act for him in drawing up the application,

is *his* agent, for whose mistakes of fact committed in the statements or answers to interrogatories in the applications, *he* is responsible.

If, however, the agent, being empowered to *receive* and *transmit* written applications for insurance to the company, be requested by the applicant to copy the answers which he *shall* make in another application for insurance upon the same property taken away by him to fill up, instead of waiting until he receive from the applicant such answers to copy, send to his company an old application for insurance upon the same property corrected to suit the change of circumstances by himself, thus *sending* an application which he was not authorized by the applicant to send, the company is estopped from setting up the mistakes of fact in the application so missent by their agent in defence to a suit on the policy for a loss under it.

The company cannot be affected with notice by *verbal* communications made by the applicant to an agent authorized only as above; and in a suit upon the policy for a loss, evidence of verbal communications of facts made to the agent varying from the statements in the written application, is inadmissible to avoid the effect of misstatements or mistakes in the written application.

If it be doubtful from the words of a policy whether certain statements made by the insured relative to the subject of insurance are to be regarded as warranties or representations, they will be regarded as representations merely.

Where the written application for a policy of fire insurance contained amongst others the following questions and answers: "19. Are the works operated on account of the proprietors or are they rented? Ans. By the proprietor. 20. Are they immediately superintended by one of the proprietors? If not, by whom? Ans. Yes."—Which answers were both untrue; *it was held*, that evidence was inadmissible to show that these misstatements were under the circumstances immaterial to the risk ; since, whether they were to be regarded as *warranted* or not, they were, being asked and answered, made by the parties material as representations, and so their truth made a condition of the policy, whether they were in fact material or not.

MOTION FOR A NEW TRIAL. This action was upon a fire policy effected by the plaintiff with the defendants, through an agent of the defendants residing in Providence, who, as it appeared by the evidence at the trial, was empowered solely to receive written applications for insurance at Providence, to transmit them to the board of the defendant company at Conway, Mass., and if they issued policies upon applications thus sent, to receive the premiums and deliver the policies to the assured. The policy insured the plaintiff against loss or damage by fire to the amount of $2,500, and as it stated in writing upon its face, " on his movable machinery contained in the stone building with shingle roof, situate in the town of Exeter, R. I., and occupied for the manufacture of cotton yarn. Reference is had to application No. 2,274, which is made a condition of this policy; $2,500 insurance subsists on same elsewhere."

The policy also contained on its face a printed clause in these

words : "And that this policy is made and accepted, in reference to the survey on file at this office and the conditions hereto annexed, *which are to be used and resorted to in order to explain the rights and obligations of the parties hereto in all cases not herein otherwise provided for.*"

On another page of the sheet on which the policy was printed and written, headed, in large type, " Conditions of insurance referred to in the body of the foregoing policy," were printed seventeen articles ; specifying, amongst other things, what goods and occupations were to be deemed not hazardous, hazardous, extra hazardous, and what prohibited ; what applications for insurance must specify ; the effect of false descriptions of buildings or contents insured, of increase of risk, the mode of preliminary proof, and the like.

In the 4th article of these conditions, it is stated that " applications for insurance must specify the construction and materials of the building to be insured, or containing the property to be insured ; *by whom occupied,* whether as a private dwelling or otherwise ;" and after several other provisions with regard to what it must contain, follows these two sentences : "And a false description by the insured, of a building or of its contents, or *omitting* to make known any fact or feature in the risk which increases the hazard of the same, or in a valued policy, an overvaluation, shall render absolutely void a policy issuing upon such description or valuation. *And if any survey, plan, or description of the property herein insured, is referred to in this policy, such survey, plan, or description* THEREOF, *shall be deemed and taken to be a warranty* on the part of the assured."

The paper referred to in the policy as *application* No. 2,274, was entitled on the outside, as folded for filing, "Application of Israel Wilson, Sept. 13, 1855," and above this title appeared in figures, "2,274." At the bottom of the paper outside, as folded for filing, was printed, "*Application filed* and *survey made* by," and then below in writing, " Immanuel Searle." On the inside, this paper was headed—

" Conway Mutual Fire Insurance Company.

Class No. 2.                              Policy No. 10.

" Survey of a *building* on which insurance is to be predicated."

Amongst the twenty-six questions and answers of this application were the following :—

*Question* 18. Are the buildings and machinery both owned by the applicants for this insurance ? If not, state by whom, and the nature of your interest ?

*Answer.* Yes.

*Question* 19. Are the works operated on account of the proprietors, or are they rented ?

*Answer.* By the proprietor.

*Question* 20. Are they immediately superintended by one of the proprietors ? If not, by whom ?

*Answer.* Yes.

At the trial before the chief justice, at an adjournment of the September term of the supreme court for the county of Kent, held at East Greenwich in October, the total loss by fire of the property insured, and to an amount greatly exceeding all insurance thereon, was proved to have occurred on the night of the 10th November, 1855. It was admitted that " the works," instead of being operated on account of, and superintended by the proprietor and assured, Wilson, were rented to, operated on account of, and superintended by, Alexander S. Hopkins ; and that the answers to the 19th and 20th questions of the application were false. It was evident that this falsity was caused by mistake ; the agent of the defendants, Searle, swearing, that Hopkins, who procured the insurance for the plaintiff, Wilson, corrected with him, Searle, an old application upon which a policy had been effected at the same office by a former proprietor, which he, Searle, was to send to the office at Conway to obtain a policy upon, and which he signed " Israel Wilson, applicant, by Immanuel Searle," and sent to the office, the same being in fact the only application sent upon which the policy issued ; and Hopkins, swearing on the part of the plaintiff, that the agent and himself agreed that he, Hopkins, should take out to Wilson a form of application for the Hampden office for $2,500 insurance on the same property, and which he was to bring back ·to Searle properly filled up, and which Searle, who was agent for both companies, was to copy and send to the Conway office for the purpose of procuring the policy in question.

He also swore, that Searle delivered to him three blank forms of applications for insurance to the Hampden office, having no such blanks of the Conway office, one of which was properly filled up by himself and Wilson for the purpose of procuring the $2,500 insurance on the same property proposed to be effected at the Hampden office, and which he brought back and handed to Searle for that purpose, as well as for the purpose of having the answers contained copied by Searle into a blank form of application, when the same could be procured, for the purpose of obtaining the insurance now in question at the Conway office,—that the insurance was effected, through Searle, at the Hampden office upon the application thus filled up by himself and Wilson,—that both Wilson and himself supposed that the insurance at the Conway office was procured upon an application, the answers in which were copied by Searle from the above application to the Hampden Company, according to the agreement and understanding between himself and Searle above stated.    He further swore, that he communicated to Searle, the agent of the defendants, that he was tenant of the mill, and run the same,—the duration of his lease, his superintending of the mill, and the like; all of which Searle denied, or swore that he had no recollection of.

Upon these facts the presiding judge ruled, that the paper referred to in the written part of the policy as " application No. 2,274," and made "a condition " of the policy, was, by such language, to be classed with the conditions printed on a page of the sheet containing the policy, and headed, " Conditions of insurance referred to in the body of the foregoing policy;"—that this policy obviously distinguished between an *application*, and *a survey*, plan, or description of the property insured, which it made in terms, a warranty on the part of the assured.    He noticed that the paper referred to in the policy as an application, was so named on the outside, and it was also there said, that the *application* was *filed* and the *survey made* by Immanuel Searle, the agent of the insurers, although on the inside it was headed " Survey of a building on which *insurance* was to be predicated," which clearly this paper was not, under this policy, since there was no insurance effected by it on any building.

Upon looking into the printed conditions amongst which he deemed this paper to be embraced, he said, that he found this same distinction between the application, and the survey, plan, or description of the property insured, carefully kept up, as if a different effect was to be given to that part of the paper which was treated as an application and that part which described the property ; that the 4th article of the conditions specified what the " application " must contain, and amongst other things, by whom the building to be insured, or containing the property to be insured " is occupied," and then went on to declare, that " a false description by the insured of a building, or of its contents," shall, together with omission to make known any fact or feature increasing the risk, and an over valuation, in a valued policy, " *render absolutely void a policy issuing upon such a description or valuation.*" With this distinction thus made is ushered in, he observed, in this 4th article of the conditions, the words relied on to make every answer in the application a warranty, " and if any survey, plan, or description of the property *herein insured* is referred to in this policy, such survey, plan, or description shall be deemed and taken to be a warranty on the part of the assured." He concluded that, as he did not deem an answer to a question as to who run or superintended a mill, a plan, survey, or description of the machinery in it insured, and as the assured distinguished in that respect between parts of the application, he should not hold the answers referred to as *warranties.* Taking thus a distinction set up by the policy itself, between what in the application was *warranty* and what was something else, and therefore a *representation*, he held, however, inasmuch as the 19th and 20th questions and answers related to a matter in itself material to the risk, that they were made by the parties material by being asked and answered,—that thereby their materiality was concluded,—and that no evidence could be admitted to show that they were not material in this particular case.

As this distinction was not questioned by the party moving for a new trial, it is here stated. The other rulings, being embraced in the motion for a new trial, it is unnecessary to repeat here.

Under the instructions given by the judge, the jury returned a verdict for the defendants, and a motion for a new trial was thereupon filed by the plaintiff upon the following grounds :—

*First.* Because the presiding judge instructed the jury that whether they believed the witness Hopkins, or the witness Searle, the said Searle in what he did relative to this application for insurance was to be considered the agent of the plaintiff and not the agent of the defendants.

*Second.* Because the judge instructed the jury that the delivery to Searle, the agent of the defendants as well as of the Hampden Insurance Company, of the application for insurance by both companies, under the circumstances of the case, was not an application by the plaintiff for insurance made to ·the defendants ; and that when Searle was directed and undertook to obtain the policy in suit thereupon, whether the jury believed the testimony of Searle or Hopkins, Searle in what he did in relation to the application was to be considered as the agent of the plaintiff ; and that whether the errors in the application were made by the plaintiff, or through the mistake of Searle, without the knowledge or consent of the plaintiff, yet the erroneous application was to be considered the application of the plaintiff.

*Third,* in substance, that the judge ruled out evidence offered by the plaintiff to show the immateriality to the risk of questions and answers in the application respecting who occupied, operated, and superintended the " works," a part of the machinery in which was insured ; the plaintiff offering to prove, as a matter of fact, that the risk would be less hazardous if the mill were operated on account of, and superintended by the tenant Hopkins, than if operated and superintended as represented by the plaintiff.

It was agreed that the motion should be argued before the court sitting in Providence, and judgment thereon entered by the clerk of the court for the county of Kent, as of the September term.

At the September term of the court for the county of Providence, the motion was argued by *Cozzens & R. W. Greene* for the motion, and by *Bradley* against it.

*Cozzens & Greene* contended, that Searle was the agent of

the defendants, and had no authority to sign an erroneous application for the plaintiff; and that any errors made by him in applying to the office for insurance for the plaintiff was the error of the office committed by their agent; and they cited, *Dennison* v. *Thomaston Mut. Ins. Co.* 20 Maine, 125, 134 ; *Howard Fire Ins. Co.* v. *Brewer*, 11 Harris, 23 Penn. 50 ; *Masters* v. *Madison County Mut. Ins. Co.* 11 Barb. Sup. Ct. R. 624 ; *M'Ewen et al.* v. *Montgomery Mut. Ins. Co.* 5 Hill, 101, 105 ; *Sexton et al.* v. *Montgomery Mut. Ins. Co.* 9 Barb. Sup. Ct. R. 191 ; *Peck* v. *New London Mut. Ins. Co.* 22 Conn. 575. The fact that the agent of the defendants made the error negatives the materiality of it. *Kennedy et al.* v. *St. Lawrence County Mut. Ins. Co.* 10 Barb. Sup. Ct. R. 285, 289. *Hartford Protection Ins. Co.* v. *Harmer*, 2 Ohio, (N. S.) 452. To distinction between effect of misrepresentation as to building when insured, and as to it when only stock in it is insured. *French* v. *Chenango County Ins. Co.* 7 Hill, 122. That the materialty of the misrepresentation should have been left to the jury, and evidence allowed to be put in as to it, they cited, *Yates* v. *Madison County Ins. Co.* ·2 Comst. 44.

*Bradley* commented on cases cited, and argued that where the agent, as here, was a mere agent to receive and transmit written applications to a distant board who were to act upon them, his knowledge as to the facts is immaterial; and a court of law cannot reform a policy which is erroneous, even if it were not. He cited *Holmes* v. *Charleston Mut. Life Ins. Co.* 10 Metc. 211, 216 ; *Lowell* v. *Middlesex Mut. Fire Ins. Co.* 8 Cush. 127, 133 ; *Vose* v. *Eagle Life & Health Ins. Co.* 6 Cush. 42, 49. As to the inadmissibility of evidence to show the immateriality of the false answer in a case where it is given to a question in its nature material to the risk, he cited, *Strong* v. *Manufact. Ins. Co.* 10 Pick. 40 ; 1 Phillips, 289, 3d ed. ; 2 Duer on Ins. 680, ed. 1846 ; 1 Parsons Merc. Law, 431 ; Angell on Fire & Life Ins. § 177 ; *Burritt* v. *Saratoga Mut. Fire Ins. Co.* 5 Hill, 188 ; *Clark* v. *New England Mut. Fire Ins. Co.* 6 Cush. 342, 347, 348 ; *Davenport* v. *Same*, Ibid. 340 ; *Shelden & Co.* v. *Hartford Fire Ins. Co.* 22 Conn. 235. He argued also, that referred to as it was in this case, the answers in the application were warranties, and

cited, *Glendall Woollen Co.* v. *Hartford Fire Ins. Co.* 21 Conn. 19, 35, 36; *Houghton* v. *Manufact. Mut. Fire Ins. Co.* 8 Metc. 114; *Jennings* v. *Chenango County Mut. Ins. Co.* 2 Denio, 75, 82, 83; *Egan* v. *Mut. Ins. Co. of Albany,* 5 Denio, 327; Angell on Fire & Life Ins. § 18; 1 Parsons Merc. Law, 520. That Pennsylvania cases, in cases of errors and mistakes, cannot be relied upon as authority, inasmuch as courts of law there reform contracts to the same extent as courts of equity if erroneous, he quoted *Susquehannah Ins. Co.* v. *Perrine,* 7 Watts & Serg. 348.

*Cozzens & Greene,* in reply, cited Angell on Fire & Life Ins. § 147; *Burritt* v. *Saratoga County Ins. Co.* 5 Hill, 191; *Barret* v. *Union Mut. Fire Ins. Co.* 7 Cush. 175; *Forbes* v. *Agawam Mut. Fire Ins. Co.* 9 Cush. 470.

AMES, C. J. The decision of this motion turns upon the legal effect of a very few facts, the simple statement of which is the best argument that can be made of the questions which it involves. Searle, the agent of the defendants, through whom the plaintiff effected his policy with them, was not, according to the proof, the agent of the defendants *to make* contracts of insurance binding upon them, but had only the limited power, to issue blank forms of applications for insurance, to receive them from the applicants when filled up with the answers to the questions proposed in the applications, to transmit applications for insurance in this shape to the office of the company at Conway; and if the board of directors chose, upon the basis of an application thus received, to fix a rate of premium for the risk proposed and to make out a policy to cover it, to receive the policy, and, upon receipt of the premium, to deliver it to the assured.

In the case at bar, it being admitted that the answers to two questions in the application, relating to the person on whose account the plaintiff's mill was run, and who superintended it, were false, through error or mistake of some one, the question upon the testimony was, whether the mistake was made by Alexander S. Hopkins, the agent of the plaintiff and applicant to procure the insurance, or by Searle, the agent of the defendant insurance company through whom it was effected with them. Both were witnesses in the cause on the part of their respec-

13 *

tive principals, and each threw the mistake in question upon the other. The testimony of Searle, in substance, was, that Hopkins and himself sat down together in his, the agent's, office, at Providence, and taking an old application upon which a prior insurance for $5,000 had been effected at this office, by the former proprietor of the mill, altered it to a request for $2,500 insurance, the former amount of $5,000 to be divided between this and the Hampden office, of which the witness was also agent; that they corrected this old application also as to the amount of incumbrances specified, and to suit the known change of property, and, having concluded that it was then right, Hopkins, as the agent of the plaintiff, directed him to send it to the company, as Wilson's application for insurance, although he did not, in words, authorize him to sign it for Wilson. The application, thus made out, was signed by him, Searle, for Wilson, was sent by him to the company, and the policy sued was issued upon the basis of it, no other application to that office for the plaintiff having been proposed, or by him received or transmitted to the defendants. He also swore that Hopkins did not inform him that he, Hopkins, had rented the mill, and was running and superintending it on his own account; but that, on the contrary, although he knew that the plaintiff had been a farmer, he supposed, as the application represented, that the plaintiff occupied, run, and superintended his mill himself.

Hopkins, on the other hand, as a witness for the plaintiff, swore, that although there was a proposition made to him by Searle to correct and alter the old application for the new purpose, upon his explaining to Searle his tenancy, superintendency, and the like, it was agreed that this old application would not answer at all; that thereupon, Searle, having no Conway Company blanks, handed him three Hampden Company blanks, for Wilson to fill up; that he took them out to Wilson, and one of them was filled up by Wilson and himself as an application to the Hampden Company for $2,500 insurance on the same machinery, upon which Searle afterwards handed to the plaintiff the policy effected thereon with that company; and that when he, the witness, brought back to Searle the application filled up

for insurance by the Hampden Company, it was agreed between him and Searle, that he, Searle, should, copying the Hampden application, fill up from the answers contained in it a blank application of the Conway Company, and send it to the Conway office for the other $2,500 insurance upon the machinery in the mill, which it had been proposed should be taken by that company.

Upon this state of the proof, omitting particulars unimportant to the first ground for a new trial set forth in the motion, the judge presiding at the trial, in substance, instructed the jury, that whether they believed the testimony of Hopkins or of Searle, the latter, in what he did in relation to *this* application, was to be deemed, though the agent of the defendants for some purposes, as the agent of the plaintiff; and that though the jury believed that the falsity of the application was caused by the fault or error of Searle, it could not affect the defence of the company, who were not to suffer from the errors of their agent, when employed by and acting in the proper business of the plaintiff.

Upon familiar principles of the law of agency, we are all satisfied that the distinction, here alluded to and applied by the judge, is well settled by authority, and indeed is the necessary result of proper deductions from those principles. The plaintiff was contracting, through *his* agent, with the defendants, through *their* agent; and well knew, as the course of the whole transaction showed, that the latter had no general power from the defendants to make contracts of insurance which should be binding upon them, but only the power to receive written and printed applications from those wishing to procure insurance, transmit them to the home board, and if they chose to issue policies upon them, to deliver the policies to, and receive the premiums from, the persons for whom the policies were intended. If, under such circumstances, the plaintiff chose to employ the agent of the insurers to do a duty which was incumbent on himself under the contract, and thus to make him for the performance of that duty *his* agent, he is not to be released or excused from consequences resulting from the carelessness or want of skill of the person thus employed by him, because that

person is also employed by the other contracting party in another portion of the same transaction. Without burdening our opinion with the many decided cases, cited by the learned counsel on either side, as bearing upon this point, none of which will, we believe, when critically examined, be found to impugn this familiar legal notion, we are quite satisfied with the terse expression of it by the able and learned chief justice of Massachusetts, when applying it, as the organ of his court, to the case of a fire policy, the erroneous application for which had been drawn up for the assured by a director and agent of the company insuring. Shaw, C. J., *Lowell* v. *Middlesex Fire Ins. Co.* 8 Cush. 127, 133.

At the same time we are also satisfied that the judge who tried this cause, from a misconception of the legal bearing of the testimony of Hopkins upon it, erroneously applied the distinction just spoken of, and misdirected the jury as to the effect of that testimony. It is true, that had the mistake in the application *actually* occurred, either from its being made jointly by Searle and Hopkins when employed in drawing it up, as sworn to by the former, or by Searle alone, when engaged in the act of copying another application for the purpose of sending it to the company at the request of the plaintiff or his agent, as it was agreed to be done, according to the testimony of the latter, (which was evidently the conception which labored in the mind of the judge,) the instruction thus given by him would have been perfectly correct. But, as a matter of fact, what Hopkins swore was *agreed* to be done was *not* done; and the mistake did not occur by an erroneous copying of the Hampden application. According to the testimony of this witness, Searle had no authority for sending to the defendants, as he did send, the application for a former insurance effected at their office only partially corrected to suit the new circumstances, but was to have waited until the application to the Hampden Company had come back to him filled up by Wilson, the plaintiff, and then to have copied and sent that as the plaintiff's application for insurance to the defendant company. When, therefore, he sent to the defendants the application upon which they issued this policy, he derived, if we believe the testimony of Hopkins, no

authority from the plaintiff to do the act which has caused this mischief. *He had agreed* to *act* as the agent of the plaintiff, in copying for transmission to this company, the plaintiff's application for insurance to the Hampden company, and broke his undertaking in that respect, if this testimony be true, with the plaintiff; but this, so far from proving his authority from the plaintiff for sending to the defendants the application that he did send, is the very fact relied on to prove that he was acting *ultra vires* in so doing.

Now Searle was the agent of the defendants, it is agreed, for receiving and transmitting to them written and printed applications for insurance; and if, as Hopkins swore, he, by mistake, sent this erroneous application to the defendants without authority from the plaintiff, he committed the error in the performance of a duty for which they had employed him solely as their agent; and hence they must bear the consequences of his mistake or carelessness. The case in this respect may be likened to the case of a misdelivery by a carrier's servant; for which the carrier is always held responsible. A case more resembling this than any that was cited at the hearing of this motion, was the case of *Wing* v. *Harvey*, 27 Eng. L. & Eq. 140, decided in 1854 by the lords justices of the court of appeal, in chancery. That was a claim by Wing, the plaintiff, as assignee of life policies originally issued to one Bennett, his creditor, for the payment of money insured by the Norwich Union Life Insurance Company upon Bennett's life. The defence was, under a condition of forfeiture contained in the policy, that Bennett had gone to Canada in 1835, and continued to reside there until his death in 1849, without the license of the directors of the insurance society. It being proved that the agent of the society, through whom Bennett had effected his policies, had applied to Wing, the assignee, for premiums due upon the policies after Wing had advised him of Bennett's departure for Canada, and had advised Wing that it would be safe for him, notwithstanding, to pay the premiums, and that Wing had regularly thereafter paid them to that agent and a succeeding agent of the society, who transmitted them to the head office of the society at Norwich, the lords justices held, that inasmuch as the agents

*were agents for the purpose of receiving premiums upon subsisting policies*, their receipts of the premiums from Wing after knowledge imparted to them of Bennett's departure and residence in Canada, was a waiver of the condition of forfeiture; and that whether *they* communicated the facts to the directors of the society or not, the society was bound and estopped by the knowledge, acts, acquiescence, and waiver of their agents. Now, so far as the principle of equitable estoppel upon an insurance company in such a matter is concerned, it can make no difference whether the case be tried at law or in equity; courts of law applying precisely the same rules of equitable waiver and estoppel in respect to things personal at least, and to contracts about them, as courts of equity.

Our conclusion is, that the judge should have left the case to the jury upon the testimony disclosed, with directions to them to find for the defendants if they believed the testimony of Searle, and for the plaintiff if they believed the testimony of Hopkins. On the ground of misdirection to the jury in matter of law in this particular, this motion must be allowed, and a new trial granted to the plaintiff.

As the remaining grounds of the motion have been fully argued, they may as well be disposed of now for the direction of the parties, as well as of the judge who may preside at the new trial.

The first of these, in substance is, that the defendants should, notwithstanding the statements of the written application to the contrary, be affected with knowledge of the facts verbally communicated to their agent, Searle, by Hopkins, as he swore, about his, Hopkins's, tenancy of, and running and superintending the plaintiff's mill. Had the question been one of *fraudulent* concealment or misrepresentation; had the agent been the general agent of the defendants to make contracts of insurance binding upon them, or even an agent of limited powers, but to receive and transmit *verbal* communications upon which the defendants were to insure, and the case were one of ordinary representation merely, leaving the question of materiality open, some ground for such a motion might be found in many of the cases cited by the counsel for the plaintiff. But in such a case

as this, where the power of the agent is limited to the mere receiving and transmitting a written application to a distant board of directors, upon the basis of which they are to decide whether they will enter into a contract of insurance with the applicant, and upon what terms, considering his description of the risk, and where all this, too, is known to the assured before he receives his policy, it would be violating every principle of law with regard to the admissibility of parol evidence to affect a written contract, and open a door for the practice of the grossest frauds upon insurers, to admit for a moment that such a case is a proper one for the application of the rule that notice to the agent is notice to the principal. In the first place, he is no agent for such a purpose; and again, if he were, the written representation, supposed to be, and which ought to be deliberately made, according to the common principle, waives, repels, and merges all prior mere verbal statements, and establishes itself as the basis, and the only basis of the contract. Forfeiture for breach of condition subsequent stands upon a very different footing from such representations as to existing facts, made the very basis of the contract, where the agent has, by acts done with full knowledge in the course of and within the scope of his agency, waived the forfeiture. Without repeating the accurate criticism of the cases cited by the counsel for the defendants—made at the hearing of this motion by the counsel for the plaintiff—we are quite satisfied upon the point in question with the rulings made and the reasons given in *Vose* v. *Eagle Life & Health Ins. Co.* 6 Cush. 42, 49; *Barrett* v. *Union Mut. Fire Ins. Co.* 7 Cush. 175, 179, 180, 181; *Lowell* v. *Middlesex Mut. Fire Ins. Co.* 8 Cush. 127, 133; and *Forbes* v. *Agawam Mut. Fire Ins. Co.* 9 Cush. 470, 473.

The last ground for new trial alleged in the motion is, that the judge ruled out evidence offered by the plaintiff to prove that the risk would be less hazardous if the mill or "works" were operated on account of, and superintended by, the tenant Hopkins, because of his greater knowledge and experience in the care of such property, than if operated and superintended by the plaintiff; the purpose of the evidence being to show that the falsity of the answers to questions 19 and 20 in the applica-

tion, that is, the misrepresentations in these respects, were not material to the risk.

At the hearing of this motion it seemed to be supposed by the counsel on both sides, that the admissibility of the testimony offered might depend somewhat upon the question whether the false answers in question were, technically, warranties or representations. Many cases were cited by the counsel for the defendants to show, that where applications or surveys were referred to and embraced in policies, every fact stated in them was a warranty. Certainly they would not be warranties, if termed or treated in the policy as representations, as shown by *Catlin* v. *Springfield Fire Ins. Co.* 1 Sumn. 435, 443 ; *Houghton et al.* v. *Manufact. Mut. Ins. Co.* 8 Metc. 114, 120 ; *Jones Manufacturing Co.* v. *Manufact. Mut. Fire Ins. Co.* 8 Cush. 82, 84. And where *certain* answers and certain plans, surveys, or descriptions in an application, as in the one in question, are expressly made warranties in one place, and the policy declared to be on that account void, if they are not correct, in another, the implication is strong that the application is, in other respects, to be deemed, not a *warranty*, but a representation. If the insurers, by the language they employ in *their* policy, leave a matter of this sort doubtful, if they seem inclined to use ambiguous language upon such a subject, or choose to render the meaning of the policy uncertain with regard to it by inserting clauses contradictory or useless except upon the idea that they are intended to distinguish in this respect between different parts of, or different answers in the application, it is certainly the duty of the court to construe the policy, with all its appendages, most strongly against them, and to hold the application, or so much of it as is not declared to be warranted, a representation merely. See opinion of Lord St. Leonards in *Anderson* v. *Fitzgerald*, 24 Eng. L. & Eq. R. 11–16. In some aspects and for some purposes, such a distinction would be material; but we do not see its materiality in the case and to the question now before us ; and we do not think it worth while to enter into a consideration of the different clauses of this policy, and of the conditions annexed to it, for the purpose of ascertaining whether the ruling of the judge who tried this cause was, in this respect,

correct. We are perfectly satisfied, considering that the questions falsely answered related to things in themselves material for an insurer to know,—that is, *who* occupied, *who* operated this mill, and therefore whose interests were concerned in its safety, *who* superintended or took care of it,—that the parties, by asking and answering questions of this character, are precluded afterwards from agitating their materiality, which they have thus settled for themselves. This rule should especially hold true with regard to so indefinite a matter as the qualifications of persons, not only from knowledge and skill, but from character for honesty and care, to be safe depositaries of the rights and interests of distant insurers, who must be, to a great extent, at the mercy of the assured under a fire policy, as to their causing or preventing losses, or as to honestly stating and settling for them when they have occurred. For many persons, no insurance office who knows them, would, upon any terms, take any risk whatsoever; and from others, they would require a higher or lower premium, graduated by their character for prudence, or even by the circumstances of their business condition,—in other words, by the presence or absence of temptation to make, or of inducements to guard against a loss. " Upon the facts of this case," to use the language of Mr. Justice Fletcher, in delivering the opinion of the supreme court of Massachusetts in *Vose* v. *Eagle Life & Health Ins. Co.*, before cited, in relation to this very subject, " it is not important whether the proposal or application is considered as a warranty or representation. As a warranty it was so manifestly untrue, and as a representation there was manifestly so material a misrepresentation, that in either view the policy is invalid." 6 Cush. 48.

In the late case of *Anderson* v. *Fitzgerald*, 24 Eng. L. & Eq. R. 1, which came before the house of lords, on error, from the exchequer chamber in Ireland, the precise question under a life policy was, (the policy making the answers to certain questions in the proposal warranties, but not as to questions 21 and 22,) whether the judge who tried the cause with a jury misdirected the jury, by instructing them that if they found the answers to questions 21 and 22 *both false* and *material*, they should find a verdict for the defendants, the insurers. The question was heard

in the house of lords before the lord chancellor (Lord Cran-worth,) Lord Brougham, and Lord St. Leonards, assisted by four judges of the court of exchequer, with Baron Parke at their head, and by six judges from the courts of queen's bench and common pleas.   The unanimous opinion of these distinguished jurists was, and they held, reversing the decisions upon this question of the courts of exchequer and exchequer chamber in Ireland, that the direction of the judge to the jury was wrong; and that the questions which he ought to have left to the jury, were, *first,* were the answers to the questions false, and *secondly,* were they made in obtaining or effecting the policy.   In the opinion of Baron Parke, who had requested time on behalf of the judges to consider, he says for them: " The first question, then, submitted to us is, whether it was necessary for the plain-tiff in error to prove on the trial that the above answers, or either of them, were or was material as well as false ?   We are all of opinion that it was not.   The question does not appear to us to turn upon the well-known distinction between warran-ties and representations laid down by Lord Mansfield, nor upon the point whether the declaration above mentioned was either a part of the contract binding between the parties irrespective of the policy, or meant to be referred to by it.   The proviso is clearly part of the express contract between the parties, and, on non-compliance with the condition stated in the proviso, the policy is unquestionably void."   Higher authority, or more ap-posite to the question before us, could not be imagined.   It will be remarked, too, that if the application in all its parts in this case were not made a warranty, it was made, as in the case just quoted, by the express terms of the policy, " a condition of the policy."   As no proof is necessary to prove a condition affixed by the parties to their contract to be material, since they have chosen to affix it, so none can be admitted on the other hand to prove it to be immaterial.   This ground for new trial, therefore, totally fails.

A new trial upon the first ground alleged in the motion is granted, the costs of this motion to abide the event of the suit.